[FILED]

FEB 0 7 2001

CLERK
U. S. DISTRICT COURT
MIDDLE DIST. OF ALA.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| PHILLIP DYCK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO.  00-S-77-S |
| ) | |
| ADELL RIDOLPH, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION**

In this 42 U.S.C. § 1983 action, the plaintiff, Phillip Dyck ("Dyck"), alleges that his constitutional rights were violated when he was taken against his will to the Dale County District Attorney's office and interrogated by defendants David Emery ("Emery") and David Atwell ("Atwell"). He alleges that he was detained and imprisoned without due process of law because of his race, in violation of the Fourth and Fourteenth Amendments. He further alleges that the defendants conspired to violate his civil rights because of his race. Finally, the plaintiff alleges state law claims of false arrest, false imprisonment, conspiracy and intentional infliction of emotional distress. He names as defendants District Attorney Emery, Assistant District Attorney Atwell, the Dale County Sheriff's Department, Dale County, and Adell Ridolph.[1]

The plaintiff seeks compensatory and punitive damages, injunctive relief, and attorney fees. The court has federal subject matter jurisdiction of these claims pursuant to 42 U.S.C. § 1331 and supplemental jurisdiction of the state law claims pursuant to 28 U.S.C. § 1367. The

---

[1]The plaintiff did not initially name the Sheriff of Dale County or any individual officers as defendants in this case. Although the plaintiff twice attempted to amend the complaint to add individual defendants, those amendments were not permitted. *See* Doc. # 31 (Oct. 23, 2000); Doc # 52 (Jan. 9, 2001).



parties have consented to a United States Magistrate Judge rendering final decision in this case pursuant to 28 U.S. C. § 636(c).

This action is pending before the court on the defendants' motions for summary judgment. The court has carefully reviewed the motions for summary judgment, the briefs filed in support of and in opposition to the motions, and the supporting and opposing evidentiary materials and concludes that the motions for summary judgment are due to be granted.

## II. SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." This standard can be met by the movant, in a case in which the ultimate burden of persuasion at trial rests on the nonmovant, either by submitting affirmative evidence negating an essential element of the nonmovant's claim, or by demonstrating that the nonmovant's evidence itself is insufficient to establish an essential element of his or her claim. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Jeffery v Sarasota White Sox, Inc.,* 64 F.3d 590, 593 (11th Cir. 1995); *Edwards v. Wallace Cmty. Coll.,* 49 F.3d 1517, 1521 (11th Cir. 1995).

The burden then shifts to the nonmovant to make a showing sufficient to establish the existence of an essential element of his claim, and on which he bears the burden of proof at trial. *Id.* To satisfy this burden, the nonmovant cannot rest on the pleadings, but must, by affidavit or other means, set forth specific facts showing that there is a genuine issue for trial. FED. R. CIV. P. 56(e).

The court's function in deciding a motion for summary judgment is to determine whether there exist genuine, material issues of fact to be tried; and if not, whether the movant is entitled to judgment as a matter of law. *See Dominick v. Dixie Nat'l Life Ins. Co.,* 809 F.2d 1559 (11th Cir. 1987). It is substantive law that identifies those facts which are material on motions for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 258 (1986); *See also DeLong Equip. Co. v. Washington Mills Abrasive Co.,* 887 F.2d 1499 (11th Cir. 1989).

When the court considers a motion for summary judgment, it must refrain from deciding any material factual issues. All the evidence and the inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmovant. *Earley v. Champion Int'l Corp.,* 907 F.2d 1077, 1080 (11th Cir. 1990); *See also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). The movant bears "the exacting burden of demonstrating that there is no dispute as to any material fact in the case." *Warrior Tombigbee Transp. Co. v. M/V Nan Fung,* 695 F.2d 1294, 1296 (11th Cir. 1983).

### III. FACTS[2]

On June 25, 1997, Phillip Dyke was visiting Ozark, Alabama, when Adell Ridolph ("Ridolph") handcuffed him and took him to the Dale County District Attorney's office. At the District Attorney's office, Dyke was questioned by persons he and others believed to be Emery and Atwell. After being questioned, Dyck was taken to and held in a back room, still in handcuffs. Some time later, Deputy Ford and Deputy Jones took Dyck to a holding cell. Upon placement in the holding cell, the handcuffs were removed. District Attorney Investigator

---

[2]On a motion for summary judgment the court must construe the facts in the light most favorable to the plaintiff. *See, e.g. Brown v. Crawford,* 906 F.2d 667 (11th Cir. 1990).

3

Pickett then interviewed Dyck, at which time Dyck gave a written statement. Thereafter, Pickett released Dyck.

## IV. DISCUSSION

### A. Motion to Strike Affidavits

Before addressing the defendants' summary judgment motions, the court addresses the Dale County defendants' motion to strike the plaintiff's affidavit and the affidavit of Marlene Trawick ("Trawick"). The defendants argue that the plaintiff's affidavit should be stricken as a sanction for his failure to respond to discovery or submit to a deposition. Prior to filing the motion to strike, the defendants did not file a motion to compel discovery. *See* FED. R. CIV. P. 37. Accordingly, the court concludes that the defendants' motion to strike the plaintiff's affidavit is due to be denied.

The defendants also argue that Trawick's affidavit should be stricken because it does not meet the requirements of FED. R. CIV. P. 56. FED. R. CIV. P. 56(e) requires that "affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Trawick's affidavit is simply hearsay. It is not based on personal knowledge and does not comply with FED. R. CIV. P. 56. Accordingly, Trawick is not competent to testify to those matters in her affidavit and the defendants' motion to strike her affidavit is due to be granted.

### B. Federal Claims

The plaintiff alleges that the defendants conspired against him to deprive him of his civil

rights, because of his race, in violation of 42 U.S.C. §§ 1981, 1983 and 1985.³

1. **Section 1981 Claims.** To the extent that the plaintiff alleges a § 1981 equal protection claim or conspiracy claim premised on § 1981, the defendants are entitled to summary judgment. Section 1981 gives "[a]ll persons . . . the right to make and enforce contracts" without regard to race. This section specifically relates to "the making, performance, modification and termination of contracts" and prohibits interference with the plaintiff's right to contract. 42 U.S.C. § 1981. "Section 1981 prohibits intentional race discrimination in the making and enforcement of public and private contracts." *Ferrill v. The Parker Group, Inc.*, 168 F.3d 468, 472 (11th Cir. 1999). Section 1981 does not extend to all discriminatory actions, but rather, "prohibits discrimination only in the making and enforcement of contracts." *Patterson v. McLean Credit Union*, 491 U.S. 164, 176 (1989). The plaintiff presents no facts or evidence from which a reasonable jury could conclude that the plaintiff's right to contract was in any way interfered with by any of the defendants. The plaintiff comes forward with no facts which even remotely suggest the existence of a conspiracy to interfere with his contractual rights pursuant to section 1981. Accordingly, to the extent that the plaintiff alleges a claim pursuant to 42 U.S.C. § 1981, the defendants are entitled to summary judgment.⁴

2. **Section 1983 Claim.** The plaintiff has sued the defendants under 42 U.S.C. § 1983. No substantive rights are created by Section 1983; it merely provides a remedy for

---

³The disjointed, fragmented and vague pleadings in this case have made it very difficult for the court to ascertain the exact nature of the plaintiff's complaint.

⁴The court notes that the state actors would be entitled to summary judgment on the plaintiff's § 1981 claims because section 1981 does not provide a cause of action against state actors. *Butts v. County of Volusia*, 222 F.3d 891, 892 (11th Cir. 2000). The plaintiff's sole remedy against state actors lies in a section 1983 claim. *Id.*

deprivations of federal rights created elsewhere. *Wideman v. Shallowford Cmty Hosp., Inc.*, 826 F.2d 1030 (11th Cir. 1987). To be successful on § 1983 claim, a plaintiff must establish that he suffered a deprivation of rights, privileges, or immunities secured by the Constitution and laws of the United States and that the act or omission causing the deprivation was committed by a person acting under color of state law. *Id.* "[I]n any § 1983 action the initial inquiry must focus on whether the two essential elements to a § 1983 action are present: (1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Parratt v. Taylor*, 451 U.S. 527 (1981). Thus, in order to prevail, the plaintiff must demonstrate that he was "deprived . . . of a right secured under the Constitution or federal law." *Willis v. University Health Servs., Inc.,* 993 F.2d 837, 840 (11th Cir. 1993). The plaintiff alleges that the defendants violated his Fourth and Fourteenth Amendment rights by initiating his arrest and then by continuing to detain and interrogate him because of his race, African American. The plaintiff argues that his initial arrest and subsequent detention were motivated by intentional racial discrimination in violation of his equal protection rights.

To establish a § 1983 equal protection claim, a plaintiff must show (1) that he is similarly situated with other persons who were treated differently than him, and (2) that the reason for the different treatment was based on race, religion, national origin, poverty or some other constitutionally protected interest. *Damiano v. Florida Parole and Probation Comm'n*, 785 F.2d 929 (11th Cir. 1986). The plaintiff must prove the existence of discriminatory intent;

6

arbitrary application without discriminatory intent is insufficient to survive a motion for summary judgment. *See E & T Realty v. Strickland*, 830 F.2d 1107 (11th Cir. 1987).

To survive the defendants' properly supported motions for summary judgment, the plaintiff must come forward with some evidence in support of his constitutional claim. The plaintiff relies on the affidavit of Brittany Ransom ("Ransom") to establish racially discriminatory intent. Ransom stated that the defendants all laughed at a "racist joke and clearly seemed to approve and share [Ridolph's] racist views. . . . I know that Adell Ridolph is very prejudiced against blacks. . . . It appeared to me that the fact that Phillip is black was a reason for the (sic) David Emery, David Atwell, Sam Pickett, and H.T. Jones was willing to violate his rights." (Ransom's Aff.). This conclusory affidavit, without any supporting admissible facts, is simply insufficient to defeat the defendants' motion for summary judgment. The plaintiff has failed to come forward with any evidence that he was similarly situated to others or treated differently because of his race.

> [O]fficial action will not be held unconstitutional solely because it results in a racially disproportionate impact. . . . Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause (citation omitted). "Discriminatory purpose . . . implies more than intent as volition or intent as awareness of consequences. It implies that the decisionmaker . . . selected . . . a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Personnel Administrator of Mass. v. Feeney*, 442 U.S. 256, 279 (1979) (footnote and citation omitted); *see also McCleskey v. Kemp*, 481 U.S. 279, 297-299 (1987).

*Hernandez v. New York*, 500 U.S. 352, 359 (1991).

In the absence of proof indicating the plaintiff was similarly situated to Caucasian men or that he was arrested or questioned because of his race, the defendants are entitled to summary

7

judgment as a matter of law. The plaintiff has presented no competent evidence from which a reasonable jury could conclude that he was arrested, detained or interrogated because of his race. The plaintiff simply fails to make any showing that the conduct of the defendants was intentionally racially discriminatory and thus, they are entitled to summary judgment on this claim.

3. **Section 1985 Conspiracy Claim**. The plaintiff further alleges a conspiracy pursuant to 42 U.S.C. § 1985. Section 1985 provides as follows:

> If two or more persons in any State or Territory conspire, . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . ., the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3).

Section 1985(3) reaches private conspiracies that do not involve state actors; provided, however, that the conspiracy is motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus." *Griffin v. Beckenridge*, 403 U.S. 88, 101 - 102 (1971); *See also, United Bhd. of Carpenters and Joiners of Am., Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 828 - 829 (1983); *Lyles v. City of Riviera Beach, Fla.*, 166 F.3d 1332, 1340 (11th Cir. 1999) ("Section 1985(3) does apply to conspiracies under color of state law, as well as private conspiracies.")

To be successful on a § 1985(3) conspiracy claim, "the plaintiff must allege and prove four elements: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and

8

immunities under the laws; and (3) an act in the furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprives of any right or privilege of a citizen of the United States." *United Bhd.,* 463 U.S. at 828 - 829. Although the plaintiff has alleged that the defendants' actions were based on racial animus, he has presented no probative evidence to support his allegations. The plaintiff bears the burden of proof at trial of establishing all elements of a § 1985(3) conspiracy. He has failed to present evidence of a conspiracy against him and thus, the defendants are entitled to summary judgment on his § 1985 claims.

    4.    **Conspiracy Claims Generally.** The plaintiff alleges, in very general terms, that the defendants conspired against him, in violation of federal law, to deprive him of his federally protected rights.

To establish Ridolph's liability, the plaintiff alleges a § 1983 conspiracy claim. Specifically, he argues that Ridolph "pretended to have the authority to seize the person of the plaintiff and did so as part of a conspiracy" with other state actors. (Pl.'s Res. to Jurisdiction, Doc. # 53). He maintains that his arrest, detention and interrogation were the result of an elaborate conspiracy among the defendants, initiated by Ridolph. An essential element of a 42 U.S.C. § 1983 action is that the alleged constitutional deprivation was committed by a person acting under color of state law. *American Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40 (1999). To state a viable claim for relief under § 1983, a plaintiff must assert a "deprivation . . . and that 'the party charged with the deprivation [is] a person who may fairly be said to be a state actor.'" *Id.* at 49-50. The plaintiff admits that Ridolph is a private citizen. Consequently, her actions,

9

standing alone, do not constitute actions committed by a person acting under color of state law for the purpose of imposing § 1983 liability against her. Thus, she can only be liable if she acted in conjunction with state actors to seize the plaintiff. Although the plaintiff alleges that Ridolph's actions were part of a conspiracy with local police and prosecutors,[5] he presents no evidence in support of his allegations.

A conspiracy claim justifiably may be dismissed because of the conclusory, vague, and general nature of the allegations of a conspiracy. *Fullman v. Graddick*, 739 F.2d 553, 556-557 (11th Cir. 1984). The court has carefully reviewed the plaintiff's affidavit in opposition to the motion for summary judgment. His description of his encounter with Ridolph and the other defendants does not establish the existence of a conspiracy.

> Adell asked me to come outside. Adell grabbed me and put handcuffs on me and put me in her Lexus and drove to the Dale County Courthouse and Brittany Ransom was with us. She took me to the District Attorney's office. I still had the handcuffs on me and did not go of my free will. She claimed she had authority to make me go. Further, she had a gun in her car and I felt like she would use it if I did not do as she said. Adell had some badge on her shirt and I thought she had some police authority. When we arrived at the courthouse we went to the District Attorney's Office and David Emery and David Atwell questioned me after Adell told them to question me. I was still in handcuffs while they questioned me.

(Dyck Aff.). The plaintiff presents no material facts sufficient to establish a conspiracy existed between Ridolph and the other defendants or to transform Ridolph into a state actor.

More importantly, regardless of whether his theory of recovery is a § 1983 or § 1985 conspiracy, the plaintiff presents no evidence that the parties reached an agreement to violate

---

[5]The plaintiff refers to Deputy Jones and Deputy Ford as defendants in his response to the motion for summary judgment and the court's show cause orders. However, neither Jones nor Ford are named defendants in this action.

his constitutional rights. *See Dickerson v. Alachua County Comm'n*, 200 F.3d 761, 767 (11th Cir. 2000) ("In order to establish a § 1985(3) conspiracy claim, [the plaintiff] must show an agreement between "two or more persons" to deprive him of his civil rights."); *Strength v. Hubert*, 854 F.2d 421, 425 (11th Cir. 1988) ("To establish a prima facie case of conspiracy to violate rights protected by § 1983, a plaintiff must demonstrate that the defendants "'reached an understanding' to violate his rights."); *Harvey v. Harvey*, 949 F.2d 1127, 1133 (11th Cir. 1992) (merely "stringing together" acts, without showing contacts between private person and state actors which could prove that these parties "reached an understanding" to violate plaintiff's rights, is insufficient to demonstrate the existence of a conspiracy). Thus, the court concludes that the plaintiff's bare allegations of a conspiracy are insufficient to support a claim for relief under 42 U.S.C. §§ 1983 or 1985. *Harvey*, 949 F.2d at 1133; *Fullman*, 739 F.2d at 556-557. "In conspiracy cases, a defendant must be informed of the nature of the conspiracy which is alleged. It is not enough to simply aver in the complaint that a conspiracy existed." *Fullman*, 739 F.2d at 557. Thus, the court concludes that the defendants' motions for summary judgment on the plaintiff's conspiracy claims are due to be granted.[6]

### C. Liability of Individual Defendants

1.  **Dale County**. The plaintiff sues Dale County, presumably for the actions of its law enforcement officers.[7] A plaintiff seeking to recover money damages for actions taken by

---

[6] In light of the court's disposition of the conspiracy claims, the court declines to exercise supplemental jurisdiction over any state law claims against Ridolph.

[7] Again, the plaintiff's pleadings are not models of clarity. However, in his brief in opposition to the motion for summary judgment, the plaintiff discusses the actions of Ford and Jones in support of his claim against Dale County. (Pl's Res. to Defs.' Mots. for Summ. J., p. 21 -22.)

persons in their official capacities "must look to the government entity itself." *Kentucky v. Graham,* 473 U.S. 159, 166 (1985); *See also, Brown v. Neumann,* 188 F.3d 1289, 1290 (11th Cir. 1999); *Vineyard v. County of Murray, Ga.,* 990 F.2d 1207, 1210 n.3 (11th Cir. 1993).

> Local governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers. Moreover, although the touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution, local governments, like every other § 1983 "person," by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental "custom" even though such a custom has not received formal approval through the body's official decisionmaking channels.

*Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 690 - 691 (1978). In addition, "in an official-capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law." *Kentucky,* 473 U.S. at 166. "These policies may be set by the government's lawmakers, or by those whose edicts or acts may fairly be said to represent official policy." *McMillian v. Monroe County, Ala.,* 520 U.S. 781, 784-785 (1997). Although the plaintiff alleges that the County had a policy, custom or practice that condoned the unlawful actions of its officers and it failed to properly train or supervise the officers, he presents no facts in any pleading to support those allegations.[8]

The principles of § 1983 liability for local governing bodies are well established. Under § 1983, a government entity may be held liable for the execution of its policy or custom, if that policy is made by its lawmakers or by those who has final authority to make such official policy

---

[8]The plaintiff's complaint is a quintessential example of shotgun pleading that is not favored in federal court.

that causes the deprivation of federal rights. *Monell*, 436 U.S. at 691 - 692; *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 475 (1986).[9] "[O]nly deprivations undertaken pursuant to governmental 'custom' or 'policy' may lead to the imposition of governmental liability." *Id*. The plaintiff fails to demonstrate perhaps the most essential element of his § 1983 claim against Dale County. Specifically, he presents no evidence that the execution of any county policy, practice or custom led to a violation of his constitutional rights. Accordingly, the County may be held liable only if its deputy sheriffs act with final policymaking authority.

> "[A]s we have held, "only those officials who have final policymaking authority may render the municipality liable under Section 1983." *Hill v. Clifton*, 74 F.3d 1150, 1152 (11th Cir. 1996) (emphasis added). "[T]he mere delegation of authority to a subordinate to exercise discretion is not sufficient to give the subordinate policymaking authority. Rather, the delegation must be such that the subordinate's discretionary decisions are not constrained by official policies and are not subject to review." *Mandel v. Doe*, 888 F.2d 783, 792 (11th Cir. 1989) (*citing Praprotnik*, 485 U.S. at 125-28, 108 S.Ct. at 925-26).

*Brown*, 188 F.3d at 1290. The plaintiff argues that Deputy Ford has final decision making authority because he is the Chief Deputy and Deputy Jones has final decision making authority because he is the head of the Dale County Narcotics Task Force. The law in this circuit is clear that deputy sheriffs are not final policymaking authorities. "[B]ecause the arrests in question were carried out by the Deputy Sheriff, with no question of any involvement or endorsement by the Sheriff, they were not a matter of final policy." *Id.; See also Cannon v. Macon County*, 1 F.3d 1558, 1565 (11th Cir. 1993) ("it is difficult to see how the Sheriff would have final

---

[9]The plaintiff concedes that Dale County may not be held liable under §1983 on a theory of respondeat superior and asserts that he is not proceeding against the county on such a theory. *See Monell*, 436 U.S. at 691 - 692; *Pembaur*, 475 U.S. at 475; *Morro v. City of Birmingham*, 117 F.3d 508, 514 (11th Cir. 1997)

13

authority over who each deputy arrest and whether a deputy has a probable cause to arrest and/or hold arrestee."). Moreover, the plaintiff presents no evidence that Ford or Jones made any decision initially to arrest him or thereafter to continue to detain him.[10] Thus, the court concludes that neither Ford nor Jones has final policymaking authority sufficient to impose liability on Dale County.

Alternatively, "[a] city may be held responsible where the authorized policymakers 'approve a subordinate's decision and basis for it.'" *Hill v. Clifton,* 74 F.3d 1150, 1152 (11th Cir. 1996); *see also Ortega v. Christian*, 85 F.3d 1521, 1526 (11th Cir. 1996). The plaintiff's claims against Dale County appear to stem from the actions of Ford and Jones to continue his detention after Emery and Atwell questioned him. The plaintiff has come forward with no facts or allegations that the County endorsed or approved the deputies' actions.

Finally, the language of § 1983 plainly requires proof of an affirmative causal connection between the actions taken by a defendant and the constitutional deprivation. *Swint v. City of Wadley, Ala.*, 51 F.3d 988 (11th Cir. 1995). First and foremost, the plaintiff has presented no evidence from which a reasonable jury could conclude that the County was somehow connected to the plaintiff's initial seizure by Ridolph. Second, the plaintiff has presented no facts that even remotely establish a connection between the County and the acts of the individual deputies at

---

[10]In his affidavit, Dyck describes Ford and Jones' involvement in the incident that forms the basis of his complaint.

> H.T. Jones was there when Adell Ridolph brought me into the D.A.'s office. After Emery and Atwell finished questioning me. (sic) I was took to a back room in the D.A.'s office and was held there. After a period of time, Deputy Ford and Deputy H.T. Jones took me to a holding cell for a while and Jones told me to stay and Pickett would question me. I was in handcuffs the entire (sic) and only after I was in the holding cell were the handcuffs removed.

14

the courthouse.[11] The court concludes that Dale County's motion for summary judgment is due to be granted.

**2. Dale County Sheriff's Department.** The plaintiff sued the Dale County Sheriff's Department. In this circuit, the law is well established that sheriff departments and police departments are not legal entities subject to suit or liability under 42 U.S.C. § 1983. *Dean v. Barber*, 951 F.2d 1210, 1214 (11th Cir. 1992). Accordingly, the Dale County Sheriff's Department's motion for summary judgment is due to be granted.

**3. District Attorney Emery and Assistant District Attorney Atwell.** The plaintiff alleges that these defendants arrested, imprisoned and interrogated him because of his race in violation of the Fourth and Fourteenth Amendments. Individuals have a constitutional right not to be arrested without probable cause, and a violation of this right may give rise to a claim for damages under 42 U.S.C. § 1983. *Von Stein v. Brescher*, 904 F.2d 572 (11th Cir. 1990).

The plaintiff does not sue these defendants in their official capacities. Rather, he asserts that Emery and Atwell were acting "outside the line and scope of their authority and duty as District Attorney and Assistant District Attorney." However, he presents no evidence in support of this assertion. The plaintiff's claims against Emery and Atwell appear to derive from their interrogation of him. Although the plaintiff does not elucidate for the court the nature of the interrogation, it appears from the evidence he submitted, that he was questioned about threats he heard someone else make. *See* Ransom Aff.

---

[11] The plaintiff claims that a conspiracy existed amongst the defendants. However, as the court has previously discussed, his allegations of a conspiracy are insufficient to survive summary judgment. Thus, they do not provide the causal connection necessary to sustain a § 1983 claim against the County.

15

"State prosecutors are entitled to absolute immunity from damages under Section 1983 for all acts 'intimately associated with the judicial phase of the criminal process.'" *Mullinax v. McElhenney*, 817 F.2d 711, 714 (11th Cir. 1987); *Cook v. Houston Post*, 616 F.2d 791, 793 (5th Cir. 1980). Thus, state prosecutors are entitled to absolute immunity for actions taken during the development, initiation, prosecution, and presentation of a case. *Mullinax*, 817 F.2d at 715.

> [A]bsolute immunity is an entitlement to be free from suit for money damages. . . . [T]he purpose of the immunity is to shield officials from the distractions of litigation arising from the performance of their official functions. To fulfill its purpose, official immunity protects government officials not only from having to stand trial, but also from having to bear the other burdens attendant to litigation, including pretrial discovery. . . . In *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), the Supreme Court held that a prosecutor is absolutely immune from civil suit for damages under section 1983 for actions taken "in initiating a prosecution and in presenting the State's case." *Id.* at 431, 96 S.Ct. at 995.

*Marx v. Gumbinner*, 855 F.2d. 783, 788-89 (11th Cir. 1988).

The plaintiff alleges, however, that these defendants were acting "outside the line and scope of their authority and duty as District Attorney and Assistant District Attorney" because they were not engaged in the initiation or preparation of a prosecution when they falsely imprisoned him. Therefore, according to the plaintiff, they are not entitled to any immunity. *See Marrero v. City of Hialeah*, 625 F.2d 499, n.4 (11th Cir. 1980) ("[I]f an official is acting outside the scope of his authority, he is entitled to no immunity at all."); *See also Butz v. Economou*, 438 U.S. 478 (1978). The plaintiff presents no evidence from which a reasonable jury could conclude that these defendants were acting outside the line and scope of their authority as district attorneys. In fact, the evidence demonstrates that Emery and Atwell were

16

acting in their official capacities as district attorneys to determine whether to pursue charges against the person who made threats in the plaintiff's presence.[12] Accordingly, the court concludes that defendants Emery and Atwell are entitled to absolute prosecutorial immunity for their actions.

Furthermore, Emery and Atwell are entitled to summary judgment on the merits of the claims against them because the plaintiff has failed to present any competent evidence from which a reasonable jury could conclude that these defendants were involved in his interrogation. Both Emery and Atwell deny speaking to or interrogating the plaintiff in this case. *See* Emery Aff.; Atwell Aff.

In opposition to the defendants' motion for summary judgment, the plaintiff submitted his affidavit and Ransom's affidavit to support his assertion that Emery and Atwell interrogated him. However, the affidavits are based on hearsay and are not made upon personal knowledge. Dyck states that he "described David Emery and David Atwell and then the Police Officer told me who they were." (Dyck Aff.) Ransom states that she "described David Emery, David Atwell and the Deputies because I did Not (sic) know their names at that time." (Ransom Aff.).

---

[12] The court relies on the affidavit of Brittany Ransom to ascertain the basis of the interrogation.

> On June 24, 1997 I went over to James Taylor's house and I saw Phillip Dyck there. Phillip told me he had talked with Robert Rodgers and Robert had told him he was getting out of jail and when he did he was going to jump on Shanna Ridolph for talking to the police. On June 25, 1997 I called Adell Ridolph, Shanna's mother and told her what I had been told. Adell came to the house to pick me up. We were supposed to go to the courthouse so I could tell the detectives. Adell asked me who had told me and I told her Phillip. . . . Adell went up to the house and Phillip came out. Adell handcuffed Phillip and drove him to the courthouse.
> We went straight to the District Attorney's office. Adell Ridolph told David Emery and David Atwell to question Phillip. David Emery and David Atwell then questioned Phillip and held him against his will. . . .

17

These affidavits fail to comply with the requirements of FED.R.CIV.P. 56, and cannot be used to create a genuine issue of material fact. The only competent evidence before the court demonstrates that neither Emery nor Atwell were involved in the incident that forms the basis of the plaintiff's complaint. Accordingly, the plaintiff has failed in his responsibility to establish a genuine issue about these defendants' involvement and thus, their motion for summary judgment is due to be granted.

### D. State Law Claims

Having determined that the defendants are entitled to summary judgment on the plaintiff's §§ 1981, 1983 and 1985 claims, the court declines to exercise supplemental jurisdiction of the plaintiff's state law tort claims pursuant to 28 U.S.C. § 1367. These claims will be dismissed without prejudice.

### V. CONCLUSION

Accordingly, the court concludes that the defendants' motions for summary judgment on the plaintiff's 42 U.S.C. §§ 1981, 1983 and 1985 claims are due to be granted.

A separate order will be entered.

DONE this 7th day of February, 2001.

CHARLES S. CODY
UNITED STATES MAGISTRATE JUDGE